UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| WILLIAM BOLEN, Individually and as Representative of a Class of Participants and Beneficiaries on Behalf of the Honeywell International Inc. Benefit Plan,<br><br>*Plaintiff*,<br><br>v.<br><br>HONEYWELL INTERNATIONAL INC.,<br><br>Defendant. | CLASS ACTION COMPLAINT<br><br>Case No.: __________________ |

## CLASS ACTION COMPLAINT

Plaintiff William Bolen ("Plaintiff"), individually and on behalf of the Class of participants and beneficiaries in the Honeywell International Inc. Benefit Plan (the "Plan"), as defined below, alleges the following against Honeywell International Inc. ("Honeywell" or "Defendant"), based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel, documents produced by the Plan in response to a request under ERISA § 104(b)(4), and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. It is unlawful for entities like Honeywell to impose punitive health insurance surcharges on employees who use tobacco products.

2. This lawsuit challenges Honeywell's practice of charging a "tobacco surcharge" that unjustly forces certain employees to pay higher premiums for the health insurance provided by Honeywell. Such surcharges violate the Employee Retirement Income Security Act ("ERISA") of 1974 and its anti-discrimination provisions by unfairly targeting employees based on their health status, such as tobacco use.

3. From at least 2019 through his separation in March 2026, Plaintiff was required to pay tobacco surcharge penalties in order to maintain health insurance coverage under the Honeywell-sponsored health plan. The surcharge—$1,000 per year during most of the Class Period, deducted pro rata from each paycheck—imposes an additional financial burden on Plaintiff and other similarly situated employees.

4. Tobacco surcharges have proliferated in recent years. But to be legal, they must strictly comply with the terms of ERISA, the Public Health Service Act ("PHSA"), and their implementing regulations.

5. Honeywell's tobacco surcharge program fails to comply with the terms of ERISA and the PHSA and their implementing regulations. Honeywell therefore cannot take advantage of the statutes' safe harbors, 29 U.S.C. § 1182(b)(2)(B) and 42 U.S.C. § 300gg-4(b)(2)(B). These tobacco surcharges are discriminatory, health-based surcharges in violation of the law and in violation of the ERISA fiduciary duties owed to Plan participants and beneficiaries.

6. ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health-status-related factor, including nicotine or tobacco use, unless that fee is part of a bona fide "wellness program." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

7. To qualify as a bona fide wellness program under ERISA, a company must offer a "reasonable alternative standard," by which a participant can receive the program's "full reward," that is, avoid the surcharge for the entire plan year (not just prospectively once the "reasonable alternative standard" has been completed). 42 U.S.C. § 300gg-4(j).

8. Moreover, to be a bona fide wellness program, a company must also provide notice that such a reasonable alternative exists for nicotine or tobacco users in every Plan communication

discussing the premium differential, including contact information and a statement that the recommendations of participants' physicians will be accommodated. 42 U.S.C. § 300gg-4(j).

9. At present, and over the last six (6) or more years, Honeywell has failed to include the proper notice in all Plan materials discussing the surcharge, including a notice of a reasonable alternative standard and the physician-accommodation statement. Honeywell's participant-facing materials describe the tobacco surcharge and the increased premium contributions imposed on participants, but do not provide compliant notice of all the avenues by which participants can avoid the surcharge as expressly required by 45 C.F.R. § 146.121(f)(4)(v). This is not a minor technical failure. It is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that all participants have a fair and compliant opportunity to be treated the same as non-nicotine-users.

10. Throughout the Class Period before the 2027 plan year, the Plan did not provide the required reasonable alternative standard. Even if it did, Honeywell has failed to adequately notify employees in all plan communications about the availability of such an alternative that would enable employees to avoid the surcharge for the entire year. Consequently, Honeywell's tobacco surcharge violates ERISA's anti-discrimination provisions by imposing additional costs on employees who use tobacco products without meeting the legal requirements for a bona fide wellness program.

11. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions and alleges facts to support the deficiency in the wellness program, the burden shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 704 (2025) (reaffirming the statute "place[s] on ERISA defendants the burden of proving [an] exemption's applicability.").

12. Because Honeywell failed to comply with all the statutory and regulatory criteria needed to take advantage of ERISA's safe harbor, the nicotine / tobacco surcharge violates ERISA's anti-discrimination requirements. Its collection by Honeywell was, and remains, unlawful.

13. Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover the unlawfully charged tobacco surcharges and to obtain plan-wide equitable relief to prevent Honeywell from continuing to collect these improper fees in violation of ERISA. Under 29 U.S.C. §§ 1109 and 1132(a)(2), Honeywell, as a fiduciary of the Plan, has a legal obligation to act in the best interests of its participants and to comply with federal law. Plaintiff, on behalf of himself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Honeywell's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

14. Plaintiff William Bolen is an individual citizen of the State of Indiana, residing in Elkhart, Indiana. Mr. Bolen was an employee of Honeywell from April 2008 to March 2026, working at Honeywell's South Bend, Indiana facility, and was a participant in the Plan who paid the tobacco surcharge, which was taken directly from his paycheck each pay period, including during the Class Period (November 12, 2020, to the date of judgment).

15. Plaintiff was a participant in the Plan pursuant to 29 U.S.C. § 1002(7) during the Class Period.

16. Honeywell is a Fortune 100 multinational conglomerate operating in aerospace, building automation, industrial automation, and energy, with employees across the United States. Its corporate headquarters are located at 855 S. Mint Street, Charlotte, North Carolina 28202.

17. At all times relevant to this lawsuit, Honeywell sponsored, maintained, and managed the Plan, a welfare benefit plan providing medical and other benefits to Honeywell employees and their dependents. The Plan's principal medical benefit options are self-insured, meaning benefits are paid from participant contributions and Honeywell's general assets rather than through insurance.

18. At all times relevant to this lawsuit, Honeywell served as the Plan Administrator and named fiduciary of the Plan, and exercised discretionary authority and control respecting the Plan and the tobacco surcharge program. Plaintiff currently lacks knowledge of the identities of the individual officers and employees through whom Honeywell administered the Plan and of the Plan's other individual fiduciaries. Following discovery, Plaintiff will amend the complaint to add the individual fiduciaries' names, as appropriate.

19. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION, VENUE, & EXHAUSTION

20. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.

21. This Court has personal jurisdiction over Defendant because Honeywell is headquartered in this District, administers the Plan in this District, and Plaintiff's claims and the claims of all others similarly situated arise from the acts and omissions of Defendant with respect to its activities and conduct concerning Plaintiff and the Class in the State of North Carolina.

22. Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because this is the District in which Honeywell has its principal place of business, where the Plan is administered, and where a substantial portion of the statutory breach took place. In addition, the Plan's governing document places exclusive jurisdiction and venue of all disputes arising out of or relating to the Plan in courts sitting in Charlotte, North Carolina.

23. The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the Plan.

24. Plaintiff's claims arise from statutory violations and fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts.

25. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims for benefits have been denied, not where a participant or beneficiary brings suit on behalf of a Plan for statutory violations and breaches of fiduciary duty.

26. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation—such as a requirement to exhaust administrative remedies—does not, by itself, bind the Plan.

27. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. The usual policy justifications for exhausting administrative remedies include allowing the Plan administrator to make an initial determination of the facts, allowing for judicial review and (where appropriate) deference. Those justifications do not exist here because courts will not defer to a Plan administrator's legal analysis and interpretation.

## BACKGROUND

### I. ERISA'S PROHIBITION ON PREMIUM DISCRIMINATION AND THE NARROW WELLNESS PROGRAM EXCEPTION

28. As a baseline rule, ERISA and the PHSA prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health status-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

29. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

30. Under ERISA § 505, 29 U.S.C. § 1135, Congress instructed the Departments of Labor, Health and Human Services, and Treasury (the "Departments") to issue regulations operationalizing the prohibition against discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182, and PHSA § 2705, 42 U.S.C. § 300gg-4. This authority empowers the Departments to "prescribe such regulations as [they] find[] necessary or appropriate to carry out the provisions of" Title I of ERISA. 29 U.S.C. § 1135. Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Departments' authority to issue regulations concerning group health plan requirements, which grants the power to

"promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

31. In 2006, the Departments issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "Final Regulations"). Congress incorporated those regulations into the PHSA in 2010 and, therefore, the Departments published the Final Regulations to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159; *see also* 29 C.F.R. § 2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4). These Final Regulations were approved and signed in 2013 to be effective January 1, 2014. Final Regulations, 33158.

32. The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (*e.g.,* smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan qualifies as a "program[] of health promotion and disease prevention" that satisfies all the necessary regulatory criteria. *See Cunningham v. Cornell Univ., supra.*

33. Compliance with the regulatory criteria is not optional. These criteria are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention . . . that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . ." (emphases added)).

34. Only by satisfying all of the regulatory criteria can employers ensure their plans are wellness programs and "not a subterfuge for underwriting or reducing benefits based on health status." Id. As one court concluded, regarding an employer's obligation to satisfy the regulatory criteria in a tobacco surcharge case: "[a]ll means all … no matter how small the requirement may be." *Chirinian v. Travelers Co.*, No. 24-cv-3956, 2025 U.S. Dist. LEXIS 144669, at *28 (D. Minn. July 29, 2025). Courts across the country agree, denying dismissal of materially identical claims against tobacco surcharge programs that fail to satisfy all of the regulatory requirements. *See Bokma v. Performance Food Grp., Inc.*, 783 F. Supp. 3d 882, 904-05 (E.D. Va. 2025); *McNeil v. Marriott Int'l, Inc.*, No. 25-2975-TDC, 2026 WL 2406176 (D. Md. Aug. 18, 2026).

35. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) <u>Frequency of opportunity to qualify</u>: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) <u>Size of reward</u>: Penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii).

(c) Reasonable design: Programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). This includes a requirement that "the program allows a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual who does not meet the initial standard…." *Id.*

(e) Notice requirement: "The plan must disclose in all plan materials describing the terms of the program the availability of other means of qualifying for the [full] reward." Final Regulations, 33159 (emphasis added).

36. For health-contingent wellness programs, the statute and Final Regulations require the notice be disclosed "in all plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4) (emphasis added). Plans that describe surcharges in enrollment materials without including the required notice violate this rule and fail to qualify for the statutory safe harbor. The notice requirement states:

> **Notice of availability of reasonable alternative standard**. The plan or issuer ***must*** disclose in ***all plan materials*** describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, ***the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated***. If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required. Sample language is provided in paragraph (f)(6) of this section, as well as in certain examples of this section.

29 C.F.R. § 2590.702(f)(4)(v) (emphases added).

37. The Departments explained that documents that merely "mention" a program, without describing its terms, need not include the notice. However, any plan materials that reference a premium differential based on tobacco use or other health-contingent standard must contain the required disclosure. Final Regulations, 33166 ("a plan disclosure that references a premium differential based on tobacco use … is a disclosure describing the terms of a health-contingent wellness program and, therefore, must include this disclosure."). Thus, enrollment materials or benefit guides that reference higher premiums or surcharges based on tobacco use, but omit the required disclosure notice regarding a reasonable alternative standard, including omitting contact information and a statement that a participant's physician's recommendations will be accommodated, violate this rule.

38. These requirements prevent employers from including these disclosures in some plan materials while omitting them from other materials actually distributed to participants. Employers that include misleading and varying notices, and omit the required disclosures altogether from most plan communications, run directly contrary to the Departments' guidance and fail to provide the notice necessary to make informed enrollment decisions.

39. Honeywell imposes a premium differential without providing the required notice disclosures in the participant-facing communications sent to participants.

## II. HONEYWELL'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE.

40. On its face, the Honeywell tobacco surcharge violates ERISA because Honeywell fails to comply with the statutory and regulatory notice requirements.

41. A plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health-status related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

42. Honeywell's tobacco surcharge violates this provision. Plaintiff, and all others similarly situated, were required to pay an additional premium or contribution per year based on a "health status-related factor"—their use of tobacco products. See *Bokma*, 783 F. Supp. 3d 882 (denying dismissal of materially identical tobacco-surcharge claims). Plaintiff, and all others similarly situated, were forced to pay the tobacco surcharge to remain insured under the Plan.

43. Specifically, Honeywell imposes an unlawful tobacco surcharge on employees who, or whose covered spouses or domestic partners, are enrolled in the Plan's medical coverage and are identified as—or deemed to be—tobacco users under the Plan's annual biometric screening program.

44. All U.S. benefits-eligible employees enrolled in Honeywell medical coverage (and their covered spouses and domestic partners, where applicable) who are identified as tobacco users, or who are deemed tobacco users, pay higher rates under the Plan.

45. Honeywell sometimes refers to this surcharge as a "tobacco surcharge" in its written materials and sometimes as a "tobacco user surcharge," and, on information and belief, it has appeared in payroll records only under the generic label "Hlth Care Resources Penalty." On information and belief, there is no substantive distinction among these terms.

46. Under the Plan, each enrolling employee (and covered spouse or domestic partner) must complete an annual biometric screening—a blood draw administered by the Plan's vendor that includes a cotinine test for nicotine—by a deadline in the fall before the plan year begins. A participant whose screening indicates tobacco use is charged a tobacco surcharge of $1,000 for the following plan year, deducted pro rata from each paycheck. A participant who fails to complete the screening at all is deemed a tobacco user, and is charged an additional $500 biometric surcharge, subject to a combined cap of $1,000 per person and $2,000 per couple per year. In earlier plan years, the amounts were higher still: a $1,500 tobacco surcharge and a $500 biometric surcharge.

47. Honeywell's enrollment materials affirmatively assure participants that the surcharge program was "carefully designed to be compliant with the law." It was not.

48. The surcharge is not transparent in participants' pay. On information and belief, the surcharge appears on participants' pay stubs, if at all, only under a generic label such as "Hlth Care Resources Penalty," without identifying it as a tobacco surcharge or disclosing its basis.

49. Honeywell's program conditions the price of health coverage on submission to medical testing and the disclosure of health status: a participant who declines or fails to complete the blood draw is automatically deemed a tobacco user and surcharged accordingly, regardless of whether the participant has ever used tobacco.

50. The screening result controls the surcharge for the entire following plan year. The only avoidance path Honeywell's materials disclose for an identified tobacco user is to enroll in the Plan's cessation program and complete at least one coaching call—or establish non-tobacco-user status—by the fall deadline, before the surcharged plan year even begins. A participant identified as a tobacco user is charged the surcharge for the entire following year with no disclosed means of removing it mid-year: Honeywell's own benefits webpage stated that "[t]he tobacco surcharge is removed if you complete the tobacco cessation program"—removal, not refund, and only prospectively. The Plan's governing wrap document confirms the design: premium adjustments operate "on a prospective basis only," and amounts already deducted "will not be refunded."

51. Under this tobacco surcharge program, Plaintiff paid surcharges to Honeywell in order to maintain health insurance, something he could not go without. [Plaintiff's payroll records are being gathered; per-year amounts to be added or pled on information and belief.]

52. Only in its enrollment materials for the 2027 plan year—published in June 2026, amid a nationwide wave of litigation challenging materially identical tobacco surcharge programs—did Honeywell for the first time state that a participant who misses the screening deadline may complete a cessation program by December 31, 2027 and have "any tobacco surcharge applied in 2027 … refunded." That eleventh-hour change concedes that a cessation-program alternative with retroactive relief was administratively feasible all along. It does not cure the violations during the Class Period: the refund provision appears in a single FAQ, covers only the tobacco surcharge and not the biometric surcharge, and even the 2027 disclosure omits the required waiver statement and physician-accommodation statement.

53. The Plan's governing documents fare no better. The wrap Plan document and summary plan description state that the wellness program's terms "are included in" separate benefit booklets—but the booklets do not contain them: the medical benefit booklet produced to Plaintiff's counsel contains no surcharge, alternative-standard, or wellness terms at all. The only alternative-standard disclosure in the wrap document is conditioned on a participant being "unable to participant [sic] in any of the health-related activities," and the medical summary plan description likewise gates any alternative on being "unable to participate in a tobacco cessation program"—omitting the required physician-accommodation statement, omitting any possibility of waiver, offering no alternative of any kind for the biometric surcharge, and conditioning relief on medical inability, a stricter standard than the regulations permit.

54. The varying descriptions of the surcharge across Honeywell's materials—shifting amounts, shifting deadlines, avoidance language that changes from document to document, and a payroll label that does not identify the surcharge at all—cause confusion and lead to Plan participants being unable to make informed decisions.

55. During the Class Period, Honeywell controlled the tobacco surcharge by determining which participants were charged and by withholding the tobacco surcharge from participants' paychecks. On information and belief, rather than placing these funds in a trust account, Honeywell retained the amounts collected as part of its own general assets and used them to offset the cost of funding its self-insured medical options (although discovery is needed to confirm).

56. The Plan therefore charges tobacco users higher premiums than similarly situated participants who do not use tobacco, and fails to meet the safe harbor exception.

## III. HONEYWELL CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR FOR WELLNESS PROGRAMS.

### A. Lack of Reasonable Alternative Standard.

57. Honeywell failed to provide a compliant wellness program for tobacco-using participants. As discussed further below, to qualify as a compliant wellness program under ERISA, an employer must offer a "reasonable alternative standard" for participants who cannot meet the initial health standard: in this case, a negative cotinine screening (or non-user status) under the Plan's annual biometric screening program.

58. The standard is intended to ensure that participants have an opportunity to avoid surcharges, such as tobacco-related premiums, by participating in wellness programs like smoking cessation programs. Additionally, employees must receive the full reward once they meet the alternative standard. To be clear, there must be a way for participants to avoid the surcharge for the full plan year, including retroactively once they complete the tobacco cessation program. See *Bokma*, 783 F. Supp. 3d at 904-05 (the "full reward" must be available for the entire plan year to participants who satisfy the alternative standard mid-year); *McNeil*, 2026 WL 2406176 (same).

59. ERISA offers a limited exception to its general rules forbidding discrimination based on health status, by providing safe harbor for certain bona fide wellness programs. *See* 29 U.S.C. § 1182(b)(2)(B).

60. This narrow exception means employers can offer incentives to plan participants, such as premium discounts, rebates, or adjustments to cost-sharing, in exchange for their participation in these wellness programs. One way for plans to take advantage of the safe harbor provisions while charging participants additional surcharges are to offer programs designed to improve the participant's well-being such as a smoking cessation program. The regulations

covering health-contingent wellness programs require that the wellness programs, like smoking cessation programs, satisfy certain criteria. *See* 78 Fed. Reg. 33158, 33159.

61. A plan seeking to qualify for the wellness program exception must offer a program that is "reasonable." The Department of Labor has issued regulations regarding what "reasonable" health-contingent programs must include.

62. To qualify under ERISA, wellness programs must meet three basic requirements: First, the program must have a realistic chance of improving health or preventing disease for participants, and cannot be excessively difficult, discriminatory based on health, or use questionable methods; second, everyone in a similar situation must have a chance to earn the "full reward"—in other words, the program must offer a reasonable alternative or waiver for those who cannot meet the initial health standard; third, the program must be disclosed "***in all plan materials***" describing the reward and explaining the availability of a reasonable alternative standard or waiver, and must also provide the ability to request an accommodation to the standard through one's personal physician. 29 C.F.R. § 2590.702(f)(4) (emphasis added).

63. These regulations "set forth criteria for an affirmative defense that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *See* Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33160 (June 3, 2013) (emphasis added).

64. Crucially, every one of the safe harbor requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

65. Honeywell's tobacco surcharge program did not, at any time before the 2027 plan year, satisfy the requirement to provide a reasonable alternative standard through which a

participant could obtain the full reward, and has never satisfied the requirement to provide compliant notice of a reasonable alternative standard. As a result, it cannot meet the elements of this affirmative defense.

66. Honeywell's mass enrollment communications do not disclose the cessation-program alternative in the required terms. The surcharge FAQs distributed to participants for the 2023 through 2027 plan years each describe both surcharges, their amounts, and their deadlines at length, yet none states that an alternative standard is available to every tobacco user, none discloses the possibility of waiver, and none contains the required physician-accommodation statement.

67. The only "reasonable accommodation or alternative standard" references in those FAQs appear in exceptions for pregnancy or a "significant medical issue"—conditioning relief on medical inability, a materially stricter standard than the regulations allow. The biometric mailer sent to participants' homes has the same defects, plus a request deadline months before the surcharged year begins.

68. Critically, no mass communication before the 2027 plan year notified employees that completing the cessation program (or any other program) would relieve them of the tobacco surcharge for the full plan year, retroactively as well as prospectively. Cessation support was touted simply as an additional benefit offered by Honeywell.

69. These conditioned, medical-inability-only references are therefore not a "reasonable alternative standard" under the controlling statutes and regulations.

70. These communications are objectively insufficient to explain the process by which employees and their covered family members can avoid or remove the tobacco surcharge.

71. Indeed, Honeywell's 2026 restatement of its medical summary plan description inserted, for the first time, a reference to "recommendations from the individual's personal

physician"—demonstrating that Honeywell knows the physician-accommodation requirement exists—yet Honeywell's mass participant communications still omit it. Indeed, the Plan permits participants to complete the biometric screening itself through their personal physicians—accommodating physicians for purposes of imposing the surcharge—while never disclosing that a physician's recommendations could relieve a participant from it.

72. Participants identified or deemed tobacco users could not avoid or recover the surcharge for a plan year once the pre-year deadline passed: the surcharge was charged pro rata across the entire year, and before the 2027 plan year no plan document or communication disclosed any refund or mid-year cure. This practice violates ERISA's requirements that eligible participants must receive the "full reward."

73. Honeywell, during the Class Period, maintained exclusive control over the tobacco surcharge, including determinations as to which participants were and continue to be required to pay the surcharge. On information and belief, Honeywell withholds the amount of the surcharge from participants' paychecks and deposits these funds into Honeywell's own accounts, rather than into a trust account (although discovery is needed to confirm).

74. By depositing these ill-gotten gains into its own accounts, Honeywell has dealt with assets of the Plan for its own interests, in violation of ERISA. Honeywell has a fiduciary responsibility to ensure that these funds are used to support coverage for employees' health insurance. Instead, by charging and collecting this unlawful surcharge, Honeywell has increased Honeywell's own bottom line, allowing it to unjustly realize financial benefits it would not have otherwise obtained without imposing these surcharges, in violation of ERISA's fiduciary duty standards.

75. Honeywell's failure to adequately disclose this information in all Plan materials deprives employees of the ability to make informed decisions about their health and wellness benefits and imposes an unlawful financial burden on employees who could otherwise meet the requirements of the alternative standard. Accordingly, the tobacco surcharge wellness program fails to comply with regulatory requirements to be a non-discriminatory wellness program under ERISA § 702.

76. Plaintiff did not complete a tobacco cessation program because he was not adequately notified of any such program. Had a tobacco cessation program been offered and disclosed as a means of avoiding the surcharge, Plaintiff would have enrolled in and completed it. Even if Plaintiff had received the necessary compliant notifications of the reasonable alternative standard (which he did not), he would not have received the full reward of being reimbursed the full tobacco surcharge for the entire Plan year as the regulations require.

77. Additionally, because, throughout the Class Period before the 2027 plan year, the Plan failed to provide a compliant reasonable alternative standard that allows participants to receive the "full reward"—avoiding the surcharge for the entire plan year—Honeywell's purported wellness program failed to provide any reasonable alternative standards and failed to comply with the requirement to make available the "full reward" to participants.

78. On this basis alone, the Plan violates ERISA's anti-discrimination provisions.

**B. Lack of Notice of Reasonable Alternative Standard.**

79. ERISA requires that employers clearly communicate the availability of reasonable alternative standards to all employees in all plan materials. Honeywell's plan documents and mass communications fail to communicate this option in the required terms at all—disclosing only medical-inability exceptions for pregnancy or a significant medical issue—in violation of ERISA's

notification requirements; and even the 2027 disclosure omits the required waiver statement and physician-accommodation statement.

80. The regulations require plans and issuers to "disclose ***in all plan materials*** describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(4)(v) (emphasis added); *see also* 42 U.S.C. § 300gg-4(j)(3)(E).

81. Honeywell does not include adequate notification in any Plan materials. As discussed above, the mass communications that describe the surcharge failed, before the 2027 plan year, to notify participants of the availability of a reasonable alternative standard that would eliminate the tobacco surcharge for the entire plan year, in violation of ERISA, and have never—including in the 2027 materials—stated that the reasonable alternative standard can be met through accommodation of a personal physician recommendation.

82. Instead, through the 2026 plan year the mass communications disclosed no alternative standard available to tobacco users generally, only medical-inability exceptions for pregnancy or significant medical issues, and no communication before the 2027 plan year disclosed retroactive relief of any kind.

83. Before the 2027 plan year, no Plan materials informed employees that completing a program would entitle them to the full reward of avoiding the surcharge for the entire year, which

discourages participation and violates ERISA's requirement that participants be clearly informed of their ability to avoid surcharges through reasonable alternative standards.

84. Moreover, no Plan material provides any information that those standards may be waived or avoided by providing a personal physician recommendation.

85. Additionally, the regulations provide sample language for the notice a lawful wellness program must give. 29 C.F.R. § 2590.702(f)(6). Paragraph (f)(6) states:

> Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

29 C.F.R. § 2590.702(f)(6).

86. Much of this language, including the ability to "earn the same reward by different means" and the fact that the Plan will "work with you . . . [and] with your doctor," is missing from the Plan's materials distributed to the Plan's participants.

87. "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158, 33166.

88. None of the Plan documents provided to Plaintiff or the Class in hardcopy or electronic form before the 2027 plan year disclosed a means by which a participant could receive the "full reward" for the tobacco surcharge for the entire Plan year. None—including the 2026 restatement of the Plan's governing documents—supplies any manner to waive the surcharge, including based on recommendations from an individual's personal physician. Nor do they present

specific contact information for the person or persons who can assist with determining the availability of any reasonable alternative beyond quitting tobacco itself.

89. As a result, the Plan materials do not provide the notice of the scope and nature of any tobacco surcharge program that the wellness-program safe harbor requires be made available to employees.

90. Honeywell failed to provide notice, in all Plan communications, of the availability and scope of a reasonable alternative standard, including accommodations recommended by the participant's personal physician, through which participants could avoid the tobacco surcharge and receive a full reward. The tobacco surcharge program is therefore unlawful, and the surcharge assessed to Plaintiff and the Class must be returned for the entire Class Period.

## CLASS ACTION ALLEGATIONS

91. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

92. 29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary of the Plan to bring an action for statutory violations of ERISA for "appropriate equitable relief."

93. In acting in this representative capacity, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan who were subject to the unlawful Honeywell tobacco surcharge. Plaintiff seeks to certify, and to be appointed as a representative of, the following Class:

> All persons in the United States who paid Honeywell's tobacco surcharge in connection with the Honeywell International Inc. Benefit Plan at any time from November 12, 2020, to the date of judgment.

94. Excluded from the Class are the Court and its officers, employees, and relatives; Honeywell and its subsidiaries, officers, and directors, and the Plan's fiduciaries; and governmental entities.

95. The Class includes thousands or tens of thousands of members and is so numerous that joinder of all members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

96. There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Honeywell owed fiduciary and other duties to the Plan and its participants and failed to take the actions alleged as to the Plan and as to any individual participant. Common questions of law and fact include, but are not limited to, the following:

a. Whether Honeywell's tobacco surcharge discriminates against Plan participants based on a health status-related factor;

b. Whether Honeywell's tobacco surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;

c. Whether Honeywell can meet every element of its statutory affirmative defense for operating a compliant wellness program;

d. Whether all of the Plan materials describing the tobacco surcharge gave notice of a reasonable alternative standard by which a plan participant may receive the full reward; and

e. Whether Honeywell, in its discretionary fiduciary capacity of managing the Plan, breached their fiduciary duties with respect to the collection and retention of the tobacco surcharge.

97. Plaintiff's claims are typical of the claims of the pertinent Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because all class claims arise from the same course of conduct

by Honeywell—the collection of an unlawful tobacco surcharge—and are based on the same legal theories.

98. Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because he was a participant in the Plan during the Class Period, has no interests that conflict with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent lawyers.

99. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Honeywell concerning the discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan which would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

100. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Honeywell has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

101. Plaintiff's attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

**COUNT I**
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Provide a Reasonable Alternative Standard Against Honeywell**

102. Plaintiff restates paragraphs 1-101 above as if fully set forth herein.

103. To enroll in the Plan's medical coverage, Plaintiff, Class members, and/or their covered spouses and domestic partners who were identified or deemed tobacco users were required to pay a tobacco surcharge in the amount of $1,000 per year ($1,500 per year in earlier plan years), deducted pro rata from each paycheck.

104. Honeywell's tobacco surcharge program is not and was not a permissible wellness program, because it did not provide for a reasonable alternative standard, in that:

a. The Plan did not allow participants a reasonable alternative means to avoid the tobacco surcharge by enrolling in a compliant smoking cessation program—indeed, before the 2027 plan year, completing a cessation program after the pre-year deadline did not remove or reduce the surcharge at all, whether prospectively or retroactively;

b. Even a former tobacco user who quit using tobacco would still have the surcharge deducted from their pay for the entire surcharged plan year—with no disclosed means to stop it mid-year and, before the 2027 plan year, no refund of amounts already paid; and

c. Because a participant could not receive the "full reward," the plan did not provide for a reasonable alternative standard.

105. Honeywell cannot and did not meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

106. Honeywell, via its tobacco surcharge program, has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and has assessed and continues to assess premiums or contributions, in violation of 29 U.S.C. § 1182(b).

107. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and the Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

108. Plaintiff and the Class members were required to pay an illegal fee, and Honeywell collected that fee from them in violation of the law. Equity requires that those funds be returned.

109. Equity also requires that the Plan be operated in conformance with the statutory safe-harbor for wellness programs.

**COUNT II**
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Give Required Notice Against Honeywell**

110. Plaintiff restates paragraphs 1-101 above as if fully set forth herein.

111. To enroll in the Plan's medical coverage, Plaintiff and the Class members who were identified as tobacco users, or whose covered family members were, were required to pay a tobacco surcharge of $1,000 per year ($1,500 per year in earlier plan years), deducted pro rata from each paycheck.

112. Honeywell's tobacco surcharge program is not and was not a permissible wellness program, because Honeywell did not offer a reasonable alternative standard, and did not give the statutorily-required notice of the scope and nature of the reasonable alternative standard. None of the plan documents provided to Plaintiff or the Class members in hardcopy or electronic form supplied a fully compliant means by which a participant could receive the full retroactive reward for the tobacco surcharge for the plan year or provided a statement that recommendations of an individual's personal physician regarding their tobacco use would be accommodated.

113. Honeywell therefore cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

114. Honeywell, via its tobacco surcharge program, has discriminated against and continues to discriminate against Plan participants based on a health status-related factor. It has assessed and continues to assess premiums or contributions in violation of 29 U.S.C. § 1182(b).

115. 29 U.S.C. § 1182(b) is a statutory provision of ERISA that Plaintiff and the Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

116. Plaintiff and the Class members were required to pay an illegal surcharge, and Honeywell collected that fee from them in violation of the law. Equity requires that those funds be returned to Plaintiff and the Class members.

117. Equity also requires that the Plan be operated in conformance with the statutory safe-harbor for wellness programs.

**COUNT III**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Loyalty Against Honeywell**

118. Plaintiff restates paragraphs 1-101 above as if fully set forth herein.

119. At all times relevant to this lawsuit, Honeywell was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and the Plan's named fiduciary, and was a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority and discretionary control respecting management of the Plan and disposition of its assets, including the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the Plan.

120. Honeywell breached its fiduciary duties by assessing and collecting the tobacco surcharge in violation of the law, as the receipt of additional funds reduced Honeywell's own costs associated with funding the self-insured Plan options and forestalled its own obligations to make contributions thereto.

121. As a result of the imposition of the tobacco surcharge, Honeywell enriched itself at the expense of the Class members, thereby providing Honeywell a windfall.

122. Honeywell breached its fiduciary duties under ERISA in that it failed to act solely in the interest of the Plan participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A).

123. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Honeywell is liable to make good to the plan all losses to the plan resulting from its breaches, to disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust all profits acquired through the violations alleged herein and which were made through use of assets of the plan—along with such other equitable or remedial relief as is proper.

124. Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

**COUNT IV**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Prudence Against Honeywell**

125. Plaintiff restates paragraphs 1-101 above as if fully set forth herein.

126. ERISA's duty of prudence requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity

and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims…" 29 U.S.C. § 1104(a)(1)(B).

127. Honeywell breached its fiduciary duties by failing to conduct an adequate and thorough investigation regarding the assessment of a tobacco surcharge on Plaintiff and other Plan participants and beneficiaries.

128. Honeywell failed to adequately investigate and assess the strict legal requirements necessary to impose a lawful nicotine / tobacco surcharge under ERISA and the PHSA.

129. These fiduciary violations caused injury to Plaintiff and other Plan participants and beneficiaries who were required to pay unlawful surcharges as a direct result of Honeywell's imprudent and insufficient investigation and analytic process.

130. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Honeywell is liable to make good to the plan all losses to the plan resulting from its breaches, to disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan and/or a constructive trust all profits acquired through the violations alleged herein and which were made through use of assets of the Plan, and for such other equitable or remedial relief as is proper.

131. Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

**COUNT V**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Failure to Monitor Fiduciaries Against Honeywell**

132. Plaintiff restates paragraphs 1-101 above as if fully set forth herein.

133. At all times relevant to this lawsuit, Honeywell, as the Plan's sponsor and named fiduciary, acted through and delegated day-to-day Plan administration to its officers and employees, including the officer designated as Plan Administrator contact (the Vice President,

Global Total Rewards), retained the authority to remove and replace those persons, and exercised discretionary authority over the selection and retention of the Plan's fiduciaries and service providers. Honeywell was therefore a fiduciary of the Plan with respect to those appointment, delegation, and removal powers within the meaning of 29 U.S.C. § 1002(21)(A).

134. A fiduciary's duty to appoint carries with it a concomitant duty to monitor. Honeywell was obligated to monitor its appointees and delegates at reasonable intervals, in such a manner as may be reasonably expected to ensure that their performance complied with ERISA and the terms of the Plan; to ensure that they possessed and employed processes adequate to administer the Plan lawfully; and to take prompt and effective action to remedy fiduciary deficiencies, including removal and replacement of those persons where necessary.

135. Honeywell breached its duty to monitor by, among other things: (a) failing to monitor its delegates' administration of the tobacco surcharge program, which for years operated without any reasonable alternative standard available after the pre-year deadline, without the legally required notices, and without any mechanism to provide participants the full reward; (b) failing to ensure that those responsible for Plan administration employed any process to evaluate the program's compliance with ERISA § 702 and its implementing regulations; (c) failing to have any system in place for reviewing the participant communications that described the surcharges; and (d) failing to remove or remediate fiduciaries and delegates whose administration of the program violated ERISA.

136. Had Honeywell discharged its monitoring duties prudently, it would have discovered that the tobacco surcharge program did not comply with ERISA's anti-discrimination provisions and the wellness-program regulations, and it would have required its delegates to bring the program into compliance or to cease collecting the surcharge.

137. As a direct and proximate result of these monitoring breaches, the Plan and its participants suffered losses, including the unlawful surcharges collected during the Class Period, and Honeywell was unjustly enriched thereby.

138. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Honeywell is liable to make good to the plan all losses to the plan resulting from its breaches, to disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust all profits it acquired through its violations alleged herein—along with such other equitable or remedial relief as is proper.

139. Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court enter judgment in his favor, both individually and on behalf of all participants and beneficiaries in the Plan, and award the following relief:

a. certifying a class action for Plaintiff's ERISA claims and appointing Chirinos Law Firm PLLC, Morgan & Morgan Complex Litigation Group, PLLC, Stiegler Law Firm LLC, and Bloom Legal LLC, as Class counsel;

b. requiring Honeywell to reimburse all participants who paid the tobacco surcharges during the Class Period;

c. requiring Honeywell to revise any tobacco surcharge program they intend to maintain to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

d. enjoining Honeywell from collecting tobacco surcharges until Honeywell revises the tobacco surcharge program to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

e. imposing a constructive trust on profits received by Honeywell as a result of fiduciary breaches committed by Honeywell or for which they are liable, upon which Plaintiff and members of the Class can make claims for benefits;

f. requiring Honeywell to disgorge all unjust enrichment or profits received as a result of fiduciary breaches committed with regard to the tobacco surcharge program for which they are liable;

g. ordering Honeywell to provide all accountings necessary to determine the amounts Honeywell must make good to the Plan and to plan participants and beneficiaries;

h. imposing the equitable remedy of surcharge and requiring Honeywell to return all funds derived from the illegal tobacco surcharge program;

i. removing the fiduciaries who have breached their fiduciary duties and enjoining them from future ERISA violations;

j. awarding Plaintiff's counsel attorneys' fees and costs consistent with ERISA's fee- and cost-shifting provisions for the costs of prosecuting this action;

k. ordering the payment of interest to the extent it is allowed by law; and

l. granting any further relief that the Court may deem just and equitable.

Dated: November 12, 2026

Respectfully submitted,

***/s/ Tamara Van Pala Skrobacki***
Tamara Van Pala Skrobacki
NC State Bar No. 46467
**MORGAN & MORGAN, P.A.**
150 Fayetteville Street, Suite 1320

Raleigh, North Carolina 27601
Telephone: (919) 446-1165
Email: t.vanpalaskrobacki@forthepeople.com
Email: shatia.myers@forthepeople.com

Tulio D. Chirinos*
**CHIRINOS LAW FIRM PLLC**
20283 State Road 7, Suite 592
Boca Raton, Florida 33498
Tel.: (561) 299-6334
tchirinos@chirinoslawfirm.com

Marc R. Edelman*
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: (813) 577-4722
medelman@forthepeople.com

Scott Lempert*
**MORGAN & MORGAN COMPLEX LITIGATION GROUP, PLLC**
2005 Market Street, Suite 600
Philadelphia, Pennsylvania 19103
Tel.: (215) 488-5362
scott.lempert@forthepeople.com

Charles J. Stiegler*
**STIEGLER LAW FIRM LLC**
318 Harrison Ave., #104
New Orleans, Louisiana 70124
Tel.: (504) 267-0777
charles@stieglerlawfirm.com

Seth J. Bloom*
**BLOOM LEGAL LLC**
825 Girod Street, Suite A
New Orleans, Louisiana 70113
Tel.: (504) 599-9997
sjb@bloomlegal.com

* *Pro Hac Vice Application Forthcoming*

*Counsel for Plaintiff and the Proposed Class*